Geoffrey S. Aaronson, Adorno & Zeder, P.A., Miami, FL, for Debtors.

**In re Robert A. ERKINS and Bernardine M. Erkins, Debtor.**

**No. 03–10502–9P1.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 7, 2006.

## *ORDER ON MOTION FOR SUMMARY JUDGMENT*

ALEXANDER L. PASKAY, Bankruptcy Judge.

### *(Doc. No. 292)*

The matter under consideration in this Chapter 11 case of Robert A. Erkins and Bernadine M. Erkins (Debtors) is a Motion for summary Judgment filed by Meglon Domestic Non–Grantor Trust (Trust). The Motion is filed in a contested matter which is generated by a Motion to Compel the Trust to Pay the Second Interim Fee Award granted by this Court to the law

firm of Adorno & Yoss (Law Firm), counsel of record for the Debtors.

In its Motion, the Trust contends that there are no genuine issues of material fact as it appears from the relevant part of the record of this case and, based on the same, the Trust is entitled to a Judgment in its favor as a matter of law denying the Motion to Compel, with prejudice.

In support of its Motion, the Trust contends that it is undisputed that there was never a meeting of the minds between the Trust and the Law Firm and there was no written agreement between the parties. The Trust further contends that the claimed oral agreement to pay the debt of a party cannot be enforced as a matter of law because it is barred by the Statute of Frauds. Fla. Stat. 725.01 et seq.

In opposition to the Motion, the Law Firm concedes that there was no written agreement to pay its fees by the Trust. It contends that the Statute of Frauds does not apply because the Trust is barred to dispute the claim, and the Law Firm is entitled to the payment by the Trust based on the Doctrine of Promissory Estoppel or, in the alternative, Equitable Estoppel.

In support of its Motion, the Trust relies on Exhibit A, which is a response by the Law Firm to a Request for Admissions. In the Response, the Law Firm states that it "is not aware of all representations made to the Court by Meglon." This no doubt refers to the so-called alleged agreement by Meglon to pay the fees of the Law Firm. The Trust also relies on Exhibit B and Exhibit C. Exhibit B is the Affidavit of Mr. Erkins and Exhibit C is the Affidavit of Mrs. Erkins. In their Affidavits they state that they have filed their Chapter 11 case initially pro se, and employed the Law Firm about a month later to represent them; that they were told that they would be responsible for the attorney fees and expenses of the Law Firm. They fur-

ther state in their Affidavits that they asked the Trust to furnish the retainer, which the Trust did. In addition, they state that the first fee award granted to the Law Firm was also paid in part by the Trust and in part by their children at their request. The Trust also relies on Exhibit D, which is the Affidavit of Petros G. Eliopulos, the Trustee of the Trust. In his Affidavit, he states that one month after the commencement of the Chapter 11 case he, and his counsel Charles Vihon, met with Mr. Geoffrey Aaronson of the Law Firm and the Debtors. He states that at that meeting, the Debtors retained the Law Firm to represent them in their Chapter 11 case. Eliopulos further states in his Affidavit that at that time Mr. Aaronson explained to the Debtors their obligations as Debtors, including their obligation to pay the fees and expenses of the Law Firm which might be awarded by the Bankruptcy Court. Eliopulos denies in his Affidavit that he or his counsel committed or promised the Law Firm that the Trust would pay any awards made to the Law Firm, other than the retainer which the Trust did pay. Eliopulos also denies that he ever negotiated or discussed with the Law Firm anything concerning the establishment of any terms or conditions of payment by the Trust of the legal fees of the Law Firm.

In support of opposition to the Motion of the Trust, the Law Firm filed an Affidavit of Geoffrey Aaronson who represented the Debtors until his Motion to Withdraw was granted, after which he stopped representing the Debtors. In his Affidavit, Mr. Aaronson states that the Debtors are eighty-three years of age; that Mr. Erkins suffered a stroke and is confined to a wheelchair and they currently survive on Social Security income, having lost all their real property assets to a judgment in favor of Edwin McCabe and having transferred

their other significant assets to the Meglon Trust. Aaronson further states that he met Petros Eliopulos and Charles Vihon on May 21, 2003, at which time they advised him of some of the background of the case, including the fact that the judgment that had been entered against the Erkins in the United States District Court for the Southern District of New York in the approximate amount of $3.9 million was a major obligation of the Debtors. According to the Affidavit, Eliopulos told Mr. Aaronson that there had been a great deal of litigation in Idaho and Massachusetts all relating to the propriety of the judgment and that on May 22, 2003, there as a hearing scheduled in the U.S. District Court for the District of Idaho concerning an attempt by a judgment creditor to hold Erkins in contempt for having allegedly transferred several properties to the Trust.

In his Affidavit, Mr. Aaronson states that initially he declined to undertake the representation of the Erkins as requested by Eliopulos and Vihon, but asked for the opportunity to conduct appropriate due diligence and then make a final decision whether he would be willing to represent the Debtors in the Chapter 11 case. In the course of conducting his due diligence, Aaronson reviewed several documents involving the litigation between the Debtors and McCabe. All information relating to this 20 year old very complex litigation involving these Debtors was furnished to the Law Firm by Vihon and Eliopulos. Eliopulos and Vihon urged Aaronson to communicate only with them and not with the Debtors. Aaronson, however, insisted that he wanted to meet with the Debtors and such meeting was arranged, as noted earlier, on May 21, 2003. According to Aaronson's Affidavit there were specific discussions with Eliopulos and Vihon concerning the discussion of fees and the Trust would be directly responsible for all the fees and expenses in this case for the following reasons: (1) the Debtors transferred all their remaining assets to the Trust: (2) the Debtors are the sole beneficiaries of the Trust; (3) the Trust was preauthorized and indeed was obligated to retain counsel on behalf of its beneficiaries, which is the Debtors.

The Trust is a spendthrift Trust for the benefit of the Debtors and provides that the Trustee is authorized:

i. to commence or defend litigation regarding the Trust or any property of the trust estate, as the Trustee considers advisable, at the expense of the Trust and to submit to arbitration, release, sell, compromise or adjust any claims against or in favor of the Trust;

ii. to enter into such contracts and agreements relating to the assets of the Trust as the Trustee considers advisable ... for as long a period of time and on such terms as the Trustee deems advisable;

iii. to employ such agents, brokers, clerks, depositories, attorneys, accountants, investment counsel, managerial or advisory personnel as Trustee considers necessary in connection with the management of the Trust, and the Trustee is authorized to pay them reasonable compensation out of the Trust's estate;

iv. to receive and utilize the opinion of counsel;

v. to execute and deliver any all instruments in writing which it may deem advisable to carry out any of the powers granted it herein or by law.

Aaronson requested that a retainer agreement be executed by the Trust and by the Debtors. The Trust specifically asked not to execute such document for litigation reasons. Aaronson acquiesced in the request, but insisted that the Trust, as

the party directly and primarily responsible for the payment of fees in the case, would be disclosed as the party paying the fees, not only the original retainers, but at each state of the case. A standard retention agreement was drawn up (Exhibit 5) which sets up in detail the scope of the engagement and in paragraph 13 states that Aaronson of the Law Firm is agreeable to accept the representation of the Debtors for a general retainer of $50,000.00 plus $5,000 costs to be applied against fees and costs awarded by the Court. This also provides that it is the intent of the Trust to forward such general retainer to the Law Firm for the benefit of the Erkins.

On August 5, 2003, this Court entered an order and authorized the payment of the cost retainer by the Trust, which was paid. Aaronson, in his Affidavit, also states that the first interim fee application in the amount of $118,445 for fees and $6,424 in costs were actually paid by the Trust but for $8,000 which was paid by the Debtors' children. Aaronson in his Affidavit describes the extensive legal services he rendered not only to the Debtors but also in a lawsuit filed by McCabe against himself, individually; his law firm; the Debtors; Eliopulos, individually, and as Trustee of the Meglon Trust; Vihon, and various other parties associated with the Erkins. According to the Affidavit, the Debtors at no time approached and talked to Mr. Aaronson concerning the fees and all conversation concerning the fees were with the Trust and attorney for the Trust, Mr. Vihon.

Basically these are the relevant facts as they appear from the record which, according to Vihon, warrants the granting of summary judgment in favor of the Trust and, of course, according to the Law Firm the Motion is meritless and should be denied.

Although the record doesn't indicate a clear cut clash between the crucial facts, it is clear that considering the various facts set forth in Affidavits, it would not be appropriate to dispose of this Motion by summary judgment. The Law Firm should be given an opportunity to establish by competent proof (1) that it had an agreement through Mr. Vihon that the Trust would pay the attorney fees for representation of the Debtors (2) that based on that promise and understanding, the Law Firm did perform and render substantial and very valuable services to the Debtors and (3) that based on the doctrine of promissory estoppel, equitable estoppel, the Motion to Compel the Payment of the Fees should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion of the Meglon Domestic Non–Grantor Trust for Summary Judgment be, and the same is hereby, denied. It if further

ORDERED, ADJUDGED AND DECREED that a pretrial conference shall be scheduled before the undersigned to prepare the issues for trial on the Motion to Compel the Trust to Pay Second Interim Fee Award on _____, 2006, beginning at _____.m. at the United States Bankruptcy Courthouse, Fort Myers, Federal Building and Federal Courthouse, Room 4–117, Courtroom D, 2110 First Street, Fort Myers, Florida.

DONE AND ORDERED.